MALBY V. PARRISH *vs.* BOARD OF APPEAL OF SHARON.

Norfolk.   November 9, 1966. — January 9, 1967.

Present: WILKINS, C.J., SPALDING, CUTTER, SPIEGEL, & REARDON, JJ.

*Zoning,* Sale of farm products, Nonconforming use.  *Equity Pleading and Practice,* Zoning appeal.

Under the zoning by-law of a town providing that in single residence districts "no premises shall be used for any organized business . . . , or except for . . . [certain stated purposes including] Farm," farming was permissible even though it could be characterized as an organized business.   [563–564]

Where no building on a dairy farm in a town had existed in which the sale of farm products had been carried on in the manner contemplated by the farmer when he applied for a permit to construct a building for the manufacturing, storing and selling of such products, the proposed construction could not have the zoning status of a preëxisting nonconforming use under either the provisions relating thereto in the town's zoning by-law or G. L. c. 40A, § 5.   [565]

Under the zoning by-law of a town permitting in single residence districts the use of premises for a "Farm . . . including the sale of products raised on the premises only," the use of a proposed new building on a dairy farm for the sale through outside service windows of "ice cream in cones as well as packages of the same, . . . milk shakes, frappes and sundaes," the milk and cream for which would come solely from that farm, would not be proscribed [566]; but the sale in a self-service room of fruit punch in half-gallon bottles would not be incidental to the sale of dairy products raised on the premises, would not be permissible under the by-law as an accessory purpose, and could not be treated as a de minimis violation of the by-law so as to allow issuance of a permit for construction of the building.   [566–567]

In a suit in equity by way of appeal to the Superior Court under G. L. c. 40A, § 21, from a decision of a zoning board of appeals, where the evidence before the judge clearly shows facts which justify the decision of the board, the decision should be sustained even though it was based on other grounds.   [568]

BILL IN EQUITY filed in the Superior Court on November 18, 1963.

The suit was heard by *Tomasello,* J.

*Daniel G. Rollins* for the defendant.

*Edward M. Dangel* (*Leo E. Sherry & Dewey C. Kadra* with him) for the plaintiff.

SPIEGEL, J.    This is an appeal by the defendant board of appeal from a final decree of the Superior Court that a decision of the board affirming a decision of the inspector of buildings denying the plaintiff's application for a building permit exceeded its authority and was therefore invalid. The judge viewed the locus and made a ''Report of Material Facts, Findings, Conclusions and Order for Decree,'' which he subsequently adopted as a report of material facts.    The evidence is reported.

The material facts do not appear to be in dispute.    The plaintiff, a dairy farmer, is the owner of thirty-eight acres of land, more or less, and buildings at the intersection of Bay Road and East Street in Sharon.    Since 1932 he has ''continuously conducted an extensive milk and dairy products producing business upon . . . [the] premises . . . [and has] a dairy herd now numbering approximately twenty cows. . . .    [A]pproximately fifteen per cent of the milk sold has been produced on the premises . . . [and] the customers in the area number approximately 2,000.''    In his desire to ''stabilize the financial upkeep of the dairy business during the slack summer season, and thus to dispose of its products,'' the plaintiff applied for a permit to erect a frame building about forty-five feet in length and twenty-six feet in width.    The building would be used for the manufacturing, storing and selling of ice cream.    According to the plan of the proposed construction there would be windows on the outside to ''be used for people that would come to buy the ice cream such as cones, milk shakes and this type of thing.    They would be what . . . [is called] outside service windows.''

The ''method of operation of the . . . dairy farm . . . included the bottling, packaging and sale of dairy products both produced upon the premises and purchased from other sources for resale, including milk, ice cream, cheese, and orange fruit drinks . . . which have been sold and distributed to the customers upon the retail milk routes of the . . . [plaintiff] . . . .    [He] intends to sell ice cream in cones as well as packages of the same, and also milk shakes, frappes

and sundaes, none of which will be consumed within the contemplated structure, but will be delivered through three windows of the usual type found in ice cream stands. . . . [T]here will be ample parking space for cars to enter the premises . . . [to make] purchases without interference with any parking upon the highways approaching the locus. . . . [T]he . . . structure will be some distance from the streets with entrances of approach therefrom."

The building would have a self-service room with open-top freezer and refrigeration cases. Prepackaged ice cream, milk and cream would be sold from that room. Fruit punch in half-gallon bottles would also be sold from the self-service room.

Section 2 (A) of the zoning by-law of the town of Sharon provides: "In the single residence districts, no new building or structure or part thereof shall be designed, constructed or used and, except as provided in Section 6, no building or structure or part thereof shall be altered, enlarged, extended, reconstructed, or used and no premises shall be used for any organized business, trade, manufacturing or commercial enterprise, or except for one or more of the following purposes: . . . 6. Farm, market garden, nursery or greenhouse; including the sale of products raised on the premises only." The trial judge ruled "[t]hat the proposed sale of dairy products aforesaid does not come within the contravention and intent" of the above zoning by-law or of G. L. c. 40A, § 5; "[t]hat the granting of the building permit would not be contrary to the provisions and intent of the Zoning By-Laws of the Town of Sharon"; and that "the Building Inspector and the respondent Board of Appeals acted arbitrarily and capriciously in denying said permit."

The board's first contention is that the by-law prohibits the use of premises in a single residence district for "any organized business, trade, manufacturing or commercial enterprise" even though it is a farm use. It argues in effect that if the proposed use can be characterized as an "organized business . . . [and so forth]" it is forbidden, even

though the use is also for a farm purpose. We do not agree. Section 2 (A) of the by-law contains a specific reference to "any organized business" and it is clear from par. 6 of this section that farming is exempt from the restriction pertaining to an organized business as defined in § 18, par. 1, of the by-law.[1]

The board next contends that the proposed structure is not exempt from § 2 of the zoning by-law either as a non-conforming use under § 6 of the zoning by-law[2] or under G. L. c. 40A, § 5. Although the judge did not specifically

---

[1] "An organized business . . . [and so forth] is one in which the owner, manager or agent employs other persons in such number or conducts the enterprise in such manner as to give to the premises used therefor the appearance of a place of business, industry, trade, or manufacturing as distinguished from or in addition to a place of residence."

[2] "Section 6. Non-Conforming Buildings and Uses.

"(A) Any lawful use existing in any building or premises at the time this by-law takes effect may be continued in the same building, premises or in the same part or parts thereof, even though not conforming to the use regulations of the district in which located.

"(B) No non-conforming building shall be altered, enlarged, extended, reconstructed, raised or moved, and no non-conforming use in any building shall be changed, extended or moved until a permit has been granted by the Inspector of Buildings, which permit shall not be issued unless the proposed alteration, enlargement, extension, reconstruction, raising or moving of the non-conforming building, or the proposed change, extension or moving of the non-conforming use will conform in every way to the provisions of this By-Law.

"(C) The Inspector of Buildings may grant a permit for the alteration, enlargement, extension, reconstruction, raising or moving of a non-conforming building, or for the changing, extension or moving of a non-conforming use, provided that:

"1. Such non-conforming use is changed to a use authorized in the district, or

"2. Such non-conforming use is not changed to a different non-conforming use, and

"3. Such change does not involve any alteration, enlargement, extension, reconstruction, raising or moving of any non-conforming building or use in any manner such that said alteration, enlargement, extension, reconstruction, raising or moving requires costs which are in excess of fifty (50) per cent of the assessed value of such non-conforming structure or use as determined by the records of the Board of Assessors existing at the time this provision is made part of this By-Law, and

"4. In a single residence . . . district, such non-conforming use is not extended or moved into any building or part of building that is designed, intended, arranged or devoted to a conforming use."

Another relevant section of the Sharon zoning by-laws is § 18, par. 10: "A non-conforming building is a building the use of which in whole or in part does not conform to the regulations of the district in which the building is located," and par. 11: "A non-conforming use [is a use] which does not conform to the use regulations of the district in which such use exists."

so state, it seems clear that his decision was based, at least in part, on a finding that the proposed building would either constitute an "alteration, enlargement, extension, reconstruction, raising or moving of a non-conforming building, or . . . changing, extension or moving of a non-conforming use" within § 6 of the zoning by-law or would not "amount to [a] reconstruction, extension or structural change, . . . [or to an] alteration . . . to provide for . . . [a] use for a purpose or in a manner substantially different from the use to which it was put before alteration . . ." within G. L. c. 40A, § 5.

Since no building existed in which the sale of farm products was carried on in the manner here contemplated, the proposed construction of the ice cream stand is clearly not exempt from § 2 of the by-law either under § 6 of the by-law or under G. L. c. 40A, § 5. *Chilson* v. *Zoning Bd. of Appeal of Attleboro,* 344 Mass. 406, 413. *Stow* v. *Pugsley,* 349 Mass. 329, 331, 332.

The only remaining issue is whether the proposed use of the building comes within the requirements of § 2 (A) and should be permitted as a conforming use. The board argues that the sale of products other than "products raised on the premises only" is contemplated and therefore § 2 (A), par. 6, of the by-law is not satisfied. There is uncontradicted testimony that the milk and cream to be used to produce the ice cream sold from the stand will be produced only from the cattle on the plaintiff's farm.[3] One question is, therefore, whether certain products which the trial judge found the plaintiff intends to sell, namely, "ice cream in cones as well as packages of the same, and also milk shakes, frappes and sundaes . . .," are "products raised on the premises only."

In *Deutschmann* v. *Board of Appeals of Canton,* 325 Mass. 297, 299, we held that "milk in cartons and in paper cups, milk shakes, ice cream and cheese . . . [where] the ice cream was to be made on the farm from milk and cream

_____
[3] We note, too, the following statement in the decision of the board: "All the milk used for the ice cream would be produced on the . . . premises."

Parrish *v.* Board of Appeal of Sharon.

produced on the farm with the addition of sugar, flavoring and gelatin; and . . . [where] the ingredients of the milk shakes, except flavoring, and of the cheese would be raised on the farm'' were ''products raised on the farm of their owner.'' The zoning by-law being construed in that case permitted the use of buildings for the purpose of farming ''and the sale of products raised on farms in the town of Canton from any suitable form of roadside stand, providing the products principally sold are raised on the premises.'' The holding in that case did not rely on the word ''principally'' in order to include the gelatin, flavoring and other ingredients of the products to be sold in the category of ''products raised on the farm.''

''The fact that products are not in their natural state does not mean that they cease to be products raised on the farm of their owner, who seeks there to sell them. We believe that the nature of the article to be sold is not the sole test, but where, by whom and in what fashion the article is produced are considerations of importance. We do not believe that one who on his premises processes milk and cream from cows on his premises thereby ceases to be a farmer, selling on his farm products there raised.'' *Id.* 301.

We see no significant distinction between ''ice cream in cones as well as packages of the same, . . . milk shakes, frappes and sundaes'' which the plaintiff in the case at bar intends to sell and the milk shakes and ice cream which the plaintiff in the *Deutschmann* case proposed to sell. The sale of such products on the premises in the proposed manner is not proscribed by the Sharon zoning by-law, provided that the milk and cream used in their preparation come solely from the plaintiff's farm. But in the instant case the items to be sold are not confined to those permitted by the by-law. There is uncontradicted testimony by the manager of the dairy[4] that fruit punch is to be sold in half-gallon bottles in the so called self-service room of the ice cream stand. It is impossible to characterize fruit punch

---

[4] The dairy is operated by a ''family corporation'' consisting of the plaintiff, his wife and two sons, one of whom was the witness.

as "products raised on the premises *only*" (emphasis supplied), even under the *Deutschmann* test.

It is true that par. 12 of § 2 (A) of the zoning by-law permits "[s]uch accessory purposes as are customarily incident to the foregoing purposes . . . ." In the case of *Needham* v. *Winslow Nurseries, Inc.* 330 Mass. 95, 101, 102, we said, "An incidental or accessory use under a zoning law is a use which is dependent on or pertains to the principal or main use." We held that the sale of garden tools, severed Christmas trees, and wreaths made from materials which had not been raised on the premises was not "part of the nursery or greenhouse business and . . . not incidental thereto." It seems to us that the sale of fruit punch is likewise not incidental to the sale of dairy products raised on the premises. See *Lexington* v. *Menotomy Trust Co.* 304 Mass. 283, 284; *Mioduszewski* v. *Saugus,* 337 Mass. 140, 143–144.

The sale of fruit punch in the proposed structure is not permitted by the Sharon zoning by-law or by G. L. c. 40A, § 5, either as a conforming use or as the continuance of a nonconforming use, and it was error for the trial court to annul the decision of the board. The sale of this single item cannot be treated as a de minimis violation of the by-law; if it were so treated it would seem but a short step to allow as an equally de minimis violation the sale of items such as soft drinks, coffee, and other articles generally sold at roadside stands.

It does not appear that the board based its decision on the proposed sale of fruit punch. This is of no consequence. "Upon appeal, it is the duty of the judge to hear all the evidence and to find the facts. He is not restricted to the evidence that was introduced before the board. The decision of the board is competent evidence to enable the judge to ascertain what conclusion the board reached in order that he may determine whether upon the facts found by him the decision of the board should stand or should be annulled or should be modified. . . . [T]he judge makes his own findings of fact, independent of any findings of the board, and

determines the legal validity of the decision of the board upon the facts found by the court, or if the decision of the board is invalid in whole or in part, the court determines what decision the law requires upon the facts found.'' *Bicknell Realty Co.* v. *Board of Appeal of Boston*, 330 Mass. 676, 679. Where the evidence clearly shows facts which justify the decision of the board, its action should be sustained even though its decision was not based on that evidence.

The final decree is reversed and a decree is to be entered stating that the decision of the board did not exceed its authority and that no modification of its decision is required.

*So ordered.*