CUMBERLAND FARMS OF CONNECTICUT, INC. *vs.* ZONING BOARD OF APPEAL OF NORTH ATTLEBOROUGH.

Bristol.    January 19, 1971. — March 18, 1971.

Present: TAURO, C.J., CUTTER, SPIEGEL, QUIRICO, & BRAUCHER, JJ.

*Zoning,* Nonconforming use or structure, Agriculture, Dairy, Special permit. *Words,* "Regulation," "Agriculture."

*Cullen* v. *Building Inspector of North Attleborough,* 353 Mass. 671, reviewed. [71–72]
The second proviso added to G. L. c. 40A, § 5, by St. 1962, c. 340, broadly interpreted, precludes zoning ordinances and by-laws from prohibiting the expansion of existing buildings and land used for agricultural purposes, but permits such laws to regulate expansion thereof in a reasonable manner in the public interest. [74–75]
In a suit in equity by way of appeal to the Superior Court from a decision of the zoning board of appeal of a town denying the operator of a large preëxisting nonconforming dairy farm lying in a rural conservation district a permit for a new barn, "and accessory uses and facilities a part thereof," erected after adoption of the town's zoning by-law to facilitate the operation of a larger, modern and technically advanced dairy farm, where it appeared that the board denied the permit in furtherance of its policy not to allow the operator to expand its agricultural uses, notwithstanding a policy of the by-law that the board should grant permits for new farm buildings in proper circumstances and notwithstanding the intent of the second proviso added to G. L. c. 40A, § 5 by St. 1962, c. 340, to protect the expansion of agricultural land, and where it further appeared that the trial judge did not correctly apply the town's zoning by-law and the statute, and that the operator's use of its premises remained agricultural and had not become commercial, this court reversed a final decree sustaining the decision of the

359 Mass. 68                                    69

Cumberland Farms of Conn., Inc. *v.* Zoning Bd. of Appeal of N. Attleborough.

board and ordered that the Superior Court remand the case to the board for a new hearing.   [75–76]

BILL IN EQUITY filed in the Superior Court on August 1, 1968.

The suit was heard by *Cahill*, J.

*Allan van Gestel* for the plaintiff.

*Jarvis Hunt*, Town Counsel, for the defendant.

CUTTER, J.   This is a new phase of litigation which was before this court in 1968.   See *Cullen* v. *Building Inspector of No. Attleborough*, 353 Mass. 671.   (The present record contains the report of the auditor-master in the *Cullen* case.) The trial judge has found that the facts determined in the *Cullen* case have not changed materially.

After the *Cullen* decision, the plaintiff (Cumberland) applied to the zoning board of appeal (the board) for a permit to use certain farm premises "in a manner permitted on approval by [the board under] the provisions of the [z]oning [b]y-[l]aw."   Approval specifically was "sought for . . . [a] free stall barn,[1] erected pursuant to building permits" issued in 1964 and 1965, "and accessory uses and facilities a part thereof."   The board's denial of the permit "without prejudice" was sustained by a judge of the Superior Court on the ground that G. L. c. 40A, § 5 (as amended by St. 1962, c. 340, with respect to agricultural uses of land),[2]

---

[1] The application described the barn as intended for use in "housing cattle" and as being approximately 550 feet by eighty feet in size.

[2] Section 5 states that except as provided in c. 40A, § 11, "a zoning . . . by-law or any amendment . . . shall not apply to existing buildings . . . nor to the existing use of any building . . . or of land to the extent to which it is used at the time of adoption of the . . . by-law, but it shall apply to any change of use thereof and to any alteration of a building . . . when the same would amount to reconstruction, extension or structural change, and to any alteration of a building . . . to provide for its use for a purpose or in a manner substantially different from the use to which it was put before alteration, or for its use for the same purpose to a substantially greater extent.   Such . . . [a] by-law may regulate non-use of non-conforming buildings . . . so as not to unduly prolong the life of non-conforming uses; provided, that no such . . . by-law shall so regulate the non-use of non-conforming land used for agriculture . . . where such non-use has existed for less than five years . . . *and provided, further, that no such ordinance or by-law shall prohibit the alteration, rebuilding or expansion within applicable setback requirements of non-conforming buildings . . . or the expansion of land, used primarily for agriculture . . .*" (emphasis supplied).   The italicized portion of the section was inserted by the 1962 amendment.

"does not protect new buildings, nor expansions of such a size and nature that the character of the use has become *commercial* instead of agricultural, as in this case" (emphasis supplied).

Cumberland operates a large dairy farm in North Attleborough (the town). The farm lies in a rural conservation district under the town's zoning by-law adopted in 1963.[3]

Prior to the town's adoption of the zoning by-law, there were sixty to seventy cows on the farm. At the time of the 1966 hearings before the auditor-master in the *Cullen* litigation, the herd had risen to 750 to 800 cows. Cumberland had leased additional land and after 1963 used substantially more land than it did prior to 1963. See the *Cullen* case, 353 Mass. 671, 675.[4] After 1963, Cumberland also installed a new system of milk production, as well as adding to its buildings and facilities.

In 1964 (prior to the *Cullen* decision), Cumberland had obtained three permits for the construction and extension of a barn. A petition for a writ of mandamus was brought to

---

[3] Section II-A of the by-law states the bounds of a "Rural Conservation District" (in which the minimum lot size is to be 30,000 square feet) and provides that the uses in such a district shall be those set forth in pars. 1 through 7 inclusive of § II of the by-law "and uses authorized upon special permit shall be those set forth under" par. 8 of § II. Section II (dealing with single residence districts) permits (a) as of right a "[g]eneral purpose farm, agriculture . . . selling only produce . . . the major portion of which is raised in . . . North Attleborough and excluding any use injurious . . . or offensive to the neighborhood," and (b) by special permit, "if authorized by the [b]oard of [a]ppeal," dairies or animal raising "provided . . . it is not conducted within . . . [100] feet of the land of another owner." Section VI (nonconforming uses) reads in part, "1. . . . Any lawful building or use of a building or premises . . . existing at the time this by-law . . . is adopted may be continued although such building or use does not conform to the [by-law] provisions . . . and such building or use may on approval of the [b]oard of [a]ppeal be extended throughout such premises. . . . 2. . . . The [b]oard of [a]ppeal may permit a non-conforming use to be changed to any specified use not substantially different in character or more . . . objectionable to a neighborhood."

[4] The *Cullen* opinion described Cumberland's activities as follows, "The operation is now that of a modern and technically advanced dairy farm. There is a large and varied assortment of farm equipment, including trucks, tractors, hay wagons, and harvesters. Approximately 800 acres of corn and 200 acres of wheat and grass are planted. Subsequent to the enactment of the zoning by-law one barn was torn down and a new barn measuring 550 feet by 80 feet has been constructed. And four grain silos and a machinery house were constructed after the petition for mandamus was brought."

command the town's building inspector to require Cumberland (a) to remove the new structure and (b) to order Cumberland to return to the scale of operations carried on before the zoning by-law took effect on July 26, 1963.[5]

1. In deciding the mandamus petition, this court concluded that, with respect to permits for the construction of a new cow barn and an addition thereto, the sizeable expansion of the nonconforming use amounted (353 Mass. 671, 676) in the aggregate "to a difference in quality rather than in degree alone." This was held to be sufficient to require Cumberland to submit for the board's approval under § VI (fn. 3) at least some aspects of the proposed expansion.

The opinion recognized (353 Mass. 671, 677–679) that, under the 1962 amendment of G. L. c. 40A, § 5, no by-law could "prohibit the . . . expansion within applicable setback requirements of non-conforming buildings . . . or the expansion of land, used primarily for agriculture." It was concluded, however, (a) that § VI "of the by-law cannot fairly be read as creating . . . a prohibition" in violation of c. 40A, § 5, because § 5 does not preclude a "by-law requirement for board approval"; and (b) that, even under the amended § 5, Cumberland could not expand its agricultural use by new construction without requesting board approval.[6]

In the *Cullen* case, the writ of mandamus was ordered

---

[5] It is stated in the *Cullen* case (pp. 673–674) that, on that date, Cumberland's premises were a nonconforming use subject to § VI of the by-law. See fn. 3, *supra*.

[6] As a companion case to the mandamus petition, the *Cullen* case (353 Mass. 671, 679) dealt with an equity suit brought by Cumberland to review the board's decision concerning the building permit for an extension of the barn. The board had held (and a Superior Court judge had sustained the board) that issuance of the permit for an extension to a barn which was not in existence until some time after November, 1964, violated the town's zoning by-law. This court (see p. 680) looked on the extension "together with . . . portions constructed under other permits . . . [as forming] one barn which is a new barn for purposes of the by-law because it" did not exist when the by-law took effect. It was held that the 1962 proviso, c. 40A, § 5, did not "apply to new buildings." This decision also made it necessary for Cumberland to seek the board's approval of the barn under § VI of the by-law. See 1968 Ann. Surv. Mass. Law, § 12.1, pp. 341–342.

(pp. 678–679) to issue. As matter of discretion, however, issuance of the writ was stayed for ninety days, or such period as the board might reasonably require to consider any further Cumberland request for approval of "the new construction and expansion carried out on the premises."

Cumberland had argued (see pp. 676–677) that the requirement (in § VI of the by-law) of the board's approval amounted to a "circumvention" of the 1962 amendment of c. 40A, § 5, "because the board . . . [would] not approve all extensions requested of it." Of this contention the opinion said (p. 677), "The difficulty with this argument is that it envisions a case that is not before us. The board has not refused Cumberland permission to expand a nonconforming agricultural use. There is nothing amiss in requiring board approval. In the event that the action of the board amounts to a prohibition in violation of § 5, either by outright refusal to permit expansion or through regulations so onerous as to amount to a prohibition, a different question will be presented."

2. Cumberland, in the present case, argues that the "different question" is now presented and that the language of the 1962 amendment of § 5 permits only "regulation of a non-conforming agricultural use rather than its prohibition," citing *Y. D. Dugout, Inc.* v. *Board of Appeals of Canton*, 357 Mass. 25, 31–32. The board, so Cumberland contends, in effect has denied any expansion of the preëxisting dairy farm use by prohibiting the new barn.[7] Cumberland makes essentially the following argument: (1) The only way to expand the agricultural use of this dairy farm (as is permitted by the 1962 amendment of § 5) is by increasing the size of the herd of cows. (2) Such an increase would necessarily mean more feed, more milking facilities, and more barn shelter from the inclement winter

---

[7] The board's refusal "without prejudice" to approve the barn permit does not mean that the denial may not amount to a prohibition. Cumberland contends that, before a new application can be filed and acted upon by the town authorities, the "barns would long since . . . [have been] torn down and the herd sold" under the mandamus order in the *Cullen* case.

359 Mass. 68                                                73

Cumberland Farms of Conn., Inc. *v.* Zoning Bd. of Appeal of N. Attleborough.

weather. (3) "To prevent Cumberland from providing shelter for its increased herd . . . completely prohibits it from expanding its use." (4) This, says Cumberland, goes beyond *regulation* of the expansion by the town's zoning by-law, which is all that the town is permitted to do under the 1962 amendment (of § 5), as interpreted in the *Cullen* case.

Although the *Cullen* case required Cumberland to obtain the approval of the board for expansion of its operations and for new construction, that case (as has been pointed out) left unsettled the issue whether such approval could be withheld (under § VI of the town's zoning by-law) in a manner which amounted to prohibition rather than regulation. It cannot fairly be denied that refusal of a board of appeal to approve permits for reasonable shelter of cattle from the New England climate, in fact and as a practical matter, may effect prohibition of dairy *land expansion*. We must now decide just what the second part of the 1962 amendment of c. 40A, § 5, meant. The *Cullen* case (p. 678) points out that the 1962 amendment (see fn. 2) did not apply to new buildings as such. The pertinent words of the amendment are: "no such . . . by-law shall prohibit the alteration, rebuilding or expansion . . . of non-conforming buildings . . . or the expansion of land, used primarily for agriculture." The question remains whether (or to what extent) the latter part of the 1962 amendment precludes a town zoning by-law, or a board of appeal acting under it, from prohibiting the "expansion of land used primarily for agriculture" by means of refusing approval of an essential new building (and thus creating a de facto prohibition of expansion).

Apart from the *Cullen* case (esp. at p. 677), no direct authority interprets the 1962 amendment, in respects here pertinent. That 1962 amendment (as the auditor-master in the *Cullen* case found) grew out of efforts of the Massachusetts Farm Bureau Federation to obtain legislation to counteract the increasingly restrictive effect of various zoning by-laws upon the conduct and expansion of agriculture

74                                     359 Mass. 68

Cumberland Farms of Conn., Inc. *v.* Zoning Bd. of Appeal of N. Attleborough.

within the State.[8]  So far as the legislative history is of
assistance, it indicates that the 1962 amendment (a) was
intended to give significant protection from zoning by-laws
to the expansion of agricultural land and (b) is not to be
interpreted narrowly.  The 1962 amendment is plainly in
conflict with any grant by the town by-law to the board of
appeal of power to prohibit the expansion of agricultural
land.  The *Cullen* case has held in effect that the 1962
amendment does permit reasonable regulation of such ex-
pansion.  We think that, in view of the purpose of the 1962
amendment, the scope of permissible "regulation" is neces-
sarily somewhat more restricted than in the usual permit
cases.  Cf. *Burnham* v. *Board of Appeals of Gloucester,*
333 Mass. 114, 117–120; *Harrison* v. *Braintree,* 355 Mass.
651, 655–656.

The provisions of the 1962 amendment are by no means
wholly clear and are, in a number of respects, unusual if not
unique.  We resolve the obvious difficulties of their inter-
pretation as follows: (1) Expansion of existing agricultural
buildings and of agricultural use of land, even if great
enough to amount to a change in the quality of agricultural
use, may not be *prohibited* by a zoning by-law but it may be
*regulated.*  (2) De facto prohibition of the expansion of
agricultural use of land may not be accomplished by un-
reasonable regulation.  (3) In view of the agricultural pro-
tective policy behind the 1962 amendment, which has sepa-

---

[8] In the ten years prior to the 1966 hearings, Massachusetts dairy farms
had decreased from 9,642 to 4,894, and those remaining "in existence were
obliged to increase the animal population to offset increasing overhead in
their effort to survive."  A bill to afford relief to agriculture was introduced
by the Federation (see 1961 House Bill No. 244).  It was not enacted.  A new
bill (1962 Senate Bill No. 117, which the original petition shows to have been
filed in behalf of the Federation) became St. 1962, c. 340 (the 1962 amend-
ment).  See also 1962 House Bills Nos. 3501 and 3557 (entitled "An Act to
Preserve, Encourage and Promote Agriculture within the Delegation of
Powers under the Zoning Enabling Act").  The legislative history is not de-
cisive of this case.  It does, however, indicate a general legislative intention
to free agriculture from substantial impediments to farm expansion presented
by some zoning by-laws.  One contemporary interpretation of the 1962
amendment was that (with an exception not here pertinent) "local [zoning]
regulations can no longer affect the alteration, rebuilding or expansion of non-
conforming buildings used for . . . [agricultural] purposes as long as setback
requirements are met, and cannot limit the expansion of the amount of the land
used for these purposes."  See 1962 Ann. Surv. Mass. Law, § 13.4, p. 155.

359 Mass. 68                                                75

Cumberland Farms of Conn., Inc. *v.* Zoning Bd. of Appeal of N. Attleborough.

rated agriculture out for separate zoning treatment, regulation must bear a reasonably direct relation to significant considerations of public health, morals, safety, and welfare, based on findings justified by substantial evidence. Approval may not be denied merely because the board would prefer another use of the land or no use. *MacGibbon* v. *Board of Appeals of Duxbury*, 356 Mass. 635, 637–638, 640–641. A local board's determination whether to give or withhold approval (as a matter of "regulation") of requests for permits, of course, will be subject to review de novo under G. L. c. 40A, § 21, in accordance with principles stated in *Parrish* v. *Board of Appeal of Sharon*, 351 Mass. 561, 567–568, and *Moore* v. *Cataldo*, 356 Mass. 325, 328.

4. The board and the trial judge have not applied the principles outlined above. Although Cumberland has no absolute right to demand a permit for a new barn (see *Gulf Oil Corp.* v. *Board of Appeals of Framingham*, 355 Mass. 275, 277; *MacGibbon* v. *Board of Appeals of Duxbury, supra,* 638), it is entitled to a hearing and decision based upon a proper interpretation and application of the statutes (including the 1962 amendment), and the by-law. This it has not had for two reasons.

(a) The by-law reflects a policy of granting permits for new farm buildings in proper circumstances, which must include, of course, fair recognition of the policy of the 1962 amendment. The board's decision indicates that its policy is to allow no expansion of Cumberland's agricultural use or facilities, without regard to whether such action constitutes reasonable regulation consistent with the by-law's purpose and the 1962 amendment. This policy of the board is demonstrated by its denial of the present application primarily on the basis that the "new barn and use . . . and the facilities required . . . [constitute] a new use of such size . . . when one considers the prior use" as to cause the board to deny approval under § VI of the by-law.[9]

---

[9] The board went on to say that it did not purport to deny use of the premises for a dairy farm "for the extent of use . . . prior to the increase in size per building permits before us and its accessory facilities." This was, in effect, a determination that the board would not permit any expansion.

(b) The board also said (see fn. 9) that "the present operation . . . must be considered commercial in nature." The trial judge viewed the board's denial as based "upon the fact that new buildings have been constructed without valid permits and because the character and extent of the operation has become commercial rather than agricultural." These statements reflect an erroneous view of the 1962 amendment, under which in our opinion Cumberland's use remains agricultural and has not become commercial. All agriculture conducted for profit is commercial in some degree. See *Jackson* v. *Building Inspector of Brockton*, 351 Mass. 472, 475–476. The term "agriculture" has a broad meaning. *Moulton* v. *Building Inspector of Milton*, 312 Mass. 195, 198–199. Even though in the *Cullen* case, the court said (353 Mass. 671, 676) that the aggregate of Cumberland's post-1963 "operations amounts to a difference in quality rather than in degree alone," the operations did not (on that account) cease to be agricultural and become commercial.

5. The final decree is reversed. In the Superior Court the case is to be remanded to the board for a new hearing in the light of this opinion. An appropriate order is to be entered in the Superior Court further staying the issuance of the writ of mandamus discussed in the *Cullen* case until the termination of new proceedings before the board and any litigation growing out of those proceedings.

*So ordered.*

---

The board said further, "[T]he present operation . . . [is] not . . . a use intended under our by-laws in that area." Neither the board nor the trial judge made specific findings about the respects in which reasonable regulation (short of prohibition) of new uses and construction will not suffice to protect the public interest. There are no findings by the board or by the trial judge sufficient to justify the conclusion that Cumberland's use is particularly offensive. Cf. *Lincoln* v. *Murphy*, 314 Mass. 16, 18–19. Cf. also *Pendoley* v. *Ferreira*, 345 Mass. 309, 312–315. The board in very general terms, without appropriate subsidiary findings, did say that the requested use "would be offensive . . . detrimental to the neighborhood, depreciate the property in the area and present a . . . health hazard" through pollution of water supplies.