# RESCRIPT OPINIONS.

TOWN OF EASTHAM & another[1] *vs.* GERTRUDE CLANCY & another.[2] No. 96-P-1911. November 20, 1997. *Zoning,* Agriculture, Special permit. *Agriculture.*

The town filed suit in Superior Court against the defendants asking for an injunction ordering them to remove all boats offered for sale on their lots, remove the temporary plastic-covered structure located on one of the lots, cease operating the farm stand, remove a trailer and two signs from the site, and remove all abandoned underground storage tanks. Eight months after issuance of a preliminary injunction, the town filed a complaint for contempt alleging that the defendants had not complied with the portions of the preliminary injunction ordering removal of the underground storage tanks and the plastic-covered structure, and that during the summer of 1994, one of the defendants, Wallis Barnes, reconstructed the farm stand and sold fruits and vegetables from it.

After a hearing, the judge found on October 21, 1994, that the plastic-covered structure was used as a greenhouse and that the use of the property for farming was a permitted use under the zoning by-laws with the greenhouse as an accessory use. The judge modified the injunction by deleting the provisions ordering removal of the greenhouse and cessation of operation of the fruit stand.

In September, 1995, a second contempt hearing was held focusing on Barnes's operation of the farm stand. After the hearing and a view of the premises, the judge found that about one and one-half acres of the total five and one-half acres of land was used for growing crops, sales, and the greenhouse. The balance of the property was either wooded areas or had residential structures on it. She concluded that only a small percentage of the produce and flowers sold at the farm stand was produced on the property. The defendants were permanently enjoined from operating a farm stand, from maintaining a greenhouse without obtaining a building permit, and from failing to remove the abandoned underground storage tanks. Barnes argues on appeal that the judge erred in enjoining him from operating a greenhouse and farm stand. We affirm.

General Laws c. 40A, § 3, as amended by St. 1994, c. 276, §§ 1, 2, states in pertinent part:

> "No zoning ordinance or by-law shall . . . prohibit, unreasonably regulate or require a special permit for the use of land *for the primary purpose of agriculture* . . . nor prohibit, or unreasonably regulate, or require a special permit for the use, expansion, or reconstruction of

---

[1]Building inspector of Eastham.
[2]Wallis R. Barnes.

existing structures thereon for the primary purpose of agriculture . . .
including those facilities for the sale of produce, . . . provided that dur-
ing the months of June, July, August, and September of every year or
during the harvest season of the primary crop raised on land of the
owner or lessee, the majority of such products for sale, based on either
gross sales dollars or volume, have been produced by the owner or les-
see of the land on which the facility is located, except that all such
activities may be limited to parcels of more than five acres in area not
zoned for agriculture . . . ." (Emphasis added.)

Without articulating how the judge's findings support his argument, Barnes
contends that the findings establish that he is entitled to an agricultural use
exemption. Barnes appears to assume that because his property exceeded five
acres and was used in part for agriculture, it automatically qualified for an
exemption from the zoning by-law. He ignores, however, the wording of the
statute which requires that the *primary* purpose of the use of the land be for
agriculture. Section 3 does not include a definition of the word "primary" in
the context of the use of land, and thus we give the word its usual and ac-
cepted meaning from "other legal contexts and dictionary definitions." *Build-
ing Inspector of Mansfield* v. *Curvin*, 22 Mass. App. Ct. 401, 402 (1986). The
inquiry is whether Barnes used his property "primarily" for agriculture.
"Primarily" means "chiefly, mainly." American Heritage Dictionary 1438 (3d
ed. 1992). Contrast the use of the word "incidental" in the zoning context:
"not . . . the primary use of the property but rather one which is subordinate
and minor in significance." *Henry* v. *Board of Appeals of Dunstable*, 418
Mass. 841, 845 (1994). Since the judge found that slightly less than one-third
of the premises was cleared for growing — the majority of the 5.5 acres being
wooded and overgrown with some residential use — it was not erroneous for
her to conclude that the primary purpose was not agricultural.[3]

Barnes claims that the judge erred in finding that he had not proved that the
majority of the produce sold at the farm stand was grown on the premises.
While Barnes did testify as to which vegetables and fruits were grown on the
premises and which were bought elsewhere to be sold, we agree with the trial
judge that he did not sustain his burden of proof that a majority of the products
for sale were produced by him.[4] Compare *Building Inspector of Chatham* v.
*Kendrick*, 17 Mass. App. Ct. 928, 929 (1983) (landowner has burden of prov-
ing defense that a nonconforming use existed). In addition, if the premises are
not primarily used for agriculture, Barnes is not entitled to a greenhouse as of
right under G. L. c. 40A, § 3. See *Henry* v. *Board of Appeals of Dunstable*,
418 Mass. at 844 (agricultural use includes uses incidental to primary use of
agriculture).

*Judgment affirmed.*

---

[3]Barnes asserts that the court "found that the land was used mainly for agricultural
purposes, even if all five acres were not devoted to crops." He does not cite to the rec-
ord appendix to support this assertion. We think that by reasons of her findings of fact
just recited, and her conclusions that c. 40A, § 3, was not available to the defendants,
the judge implicitly found that the land was not used primarily for agricultural purposes.

[4]Barnes is correct when he notes that he testified that seventy to eighty percent of the
tomatoes sold, rather than seventy to eighty percent of all produce sold, was produced
on the premises. We think the judge's error was immaterial. The correct testimony only
weakens Barnes's case.

The case was submitted on briefs.

*Kenneth K. Quigley, Jr., & Dolores E. O'Neill* for Wallis R. Barnes.

*Elizabeth A. Lane & Brian W. Riley* for the plaintiffs.