Botsford, J.
INTRODUCTION
The plaintiff Town of Concord and its Building Commissioner (collectively referred to as “the town”), brought this action to enjoin the defendants, Nat Arena, Arena Farms and Colonial Cone Ice Cream (“Colonial Cone”), from operating an ice cream stand in violation of the town’s zoning requirements. In June of 1996, a judge of this court (White, J.), denied the town’s application for a preliminary injunction. The defendants (collectively referred to as “Arena”), have now moved for summary judgment on the town’s complaint, and the town has filed a cross-motion for summary judgment. The motions present no disputed issues of fact. The sole issue is whether the Colonial Cone ice cream stand is protected by G.L.c. 40A, §3 which exempts the activities of agricultural operations from zoning and special permit requirements provided certain conditions are met. For the reasons discussed *430 below, the town’s motion for summary judgment will be allowed.
BACKGROUND
The Colonial Cone ice cream stand is situated on a 6.5 acre parcel of land located at 1100 Concord Turnpike in Concord (“Turnpike parcel”). Arena leases the Turnpike parcel. The Turnpike parcel is located in a Residential B zoning district where business uses, including retail food establishments, are not permitted. Arena also owns a non-contiguous 12.6 acre parcel of land located at 167 Fairhaven Road in Concord (“Fairhaven parcel”). A public road and a number of residential lots, not owned or leased by Arena, separate the two parcels.[4]
The primary purpose of both the Turnpike and Fairhaven parcels is agricultural: the majority of the acreage at both locations is devoted to raising flowers, fruits and vegetables. On the Fairhaven parcel, Arena operates a farm stand for the sale of the crops from both parcels,[5] and the vast majority of the Turnpike parcel’s crops are in fact sold there. No more than five percent of the Turnpike parcel’s crops are actually sold from or at the Turnpike parcel itself.[6]
The only sales that occur at the Turnpike parcel occur at the Colonial Cone facility, and between 95 to 98 percent of Colonial Cone’s sales consist of ice cream and daily products.[7] While it is true that the sale of ice cream and dairy products at the Colonial Cone facility amounts to less than one-half of the gross sales, by volume and dollar value, during the summer months[8] of the sales of all crops grown on the Turnpike parcel, as already noted, most of those crop sales occur at the Fairhaven parcel farm stand.[9]
As for the ice cream and daily products sold at the Colonial Cone, none of those products come from Arena. The Colonial Cone does not make its own ice cream — the ice cream is actually manufactured in Connecticut — nor do any of the ice cream ingredients come from Arena’s agricultural production.[10] Simply put, the Colonial Cone facility is not a farm stand with an ice cream window; it is an ice cream stand which also offers a small selection of flowers and perhaps some fruits and vegetables.
Arena began operating the Colonial Cone ice cream stand on July 9, 1995. On July 10, 1995, Arena applied to the town’s building commissioner for a certificate of occupancy to operate Colonial Cone; the following day, the application was denied. Arena appealed the denial to the town’s zoning board of appeals. While the appeal was pending, Arena continued to operate the ice cream stand until the end of October 1995. On November 9, 1995, the zoning board of appeals upheld the building commissioner’s denial of the certificate of occupancy, and it also denied Arena’s request for a variance or special permit.[11] Colonial Cone resumed the ice cream stand operations in late May of 1996 and continued operating until the end of October. In 1997, Colonial Cone again operated from May until October.
DISCUSSION
This court grants summary judgment where there are no genuine issues of material fact and where the summary judgment record entitles the moving party to judgment as a matter of law. Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976). Mass.R.Civ.P. 56(c). Because the record before me reveals no disputed factual issues, the case may properly be resolved by summary judgment.
General Laws c. 40A, §3 (§3) provides in relevant part:
No zoning ordinance or by-law shall . . . prohibit, unreasonably regulate or require a special permit for the use of land for the primary purpose of agriculture, horticulture, floriculture or viticulture; nor prohibit, or unreasonably regulate, or require a special permit for the use, expansion or reconstruction of existing structures thereon for the primary use of agriculture, horticulture, floriculture or viticulture, including those facilities for the sale of produce and wine and dairy products, provided that during the months of June, July, August, and September of every year . . . the majority of such products for sale, based on either gross sales dollars or volume, have been produced by the owner of the land on which the facility is located, except that all such activities may be limited to parcels of more than five acres . . . For such purposes, land divided by a public or private way or a waterway shall be construed as one parcel . . .
“The obvious purpose of the Act . , . is to promote agricultural use within all zoning districts in a municipality." Building Inspector of Mansfield v. Curvin, 22 Mass.App.Ct. 401, 402-03 (1986). See Cumberland Farms of Conn. v. Zoning Bd. of Appeal of N. Attleboro, 359 Mass. 68, 74 (1971). The agricultural use exemption embodied in §3 is interpreted broadly in order to promote the economic viability of agricultural enterprises in Massachusetts. See Tisbury v. Martha’s Vineyard Commission, 27 Mass.App.Ct. 1204, 1205 (1989). Where the agricultural use exemption applies, the exemption is “complete and unconditional . . . [and] is not limited to agricultural uses that do not injure a residential neighborhood . . . [V]arious uses indubitably to be classed as agricultural may be detrimental to a residential neighborhood.” Moulton v. Building Inspector of Milton, 312 Mass. 195, 197 (1942). The exemption operates even where the agricultural use in question is retail or commercial in nature. See Prime v. Zoning Bd. of Appeals of Norwell, 42 Mass.App.Ct. 796, 800 (1997) (“[The abutters’] suggestion is that a ‘retail’ operation is inconsistent with the agricultural use of land, and therefore not *431 within §3. The argument has been answered . . . : ‘All agriculture conducted for profit is commercial in some degree.’ ”) (quoting Cumberland Farms of Conn., Inc., supra, 359 Mass. at 76). Applying the foregoing principles, the courts have interpreted §3 to permit the sale of foods including ice cream, as “agricultural products”:
The fact that the products are not in their natural state does not mean that they cease to be products raised on the farm of their owner, who seeks there to sell them . . . We do not believe that one who on his premises processes milk and cream from cows on his premises thereby ceases to be a farmer, selling on his farm products they raise.
Deutschmann v. Board of Appeals of Canton, 325 Mass. 297, 301 (1950). Accord Parrish v. Board of Appeal of Sharon, 351 Mass. 561, 566 (1967).
In 1982, the scope of G.L.c. 40A, §3 was significantly expanded by the addition of the “fifty percent rule." Before the fifty percent rule, only a farm owner’s own agricultural products were afforded statutory protection. See, e.g., Parrish, supra, 351 Mass. at 566-567 (dairy farmer not permitted to sell fruit punch at ice cream stand). With the addition of the fifty percent rule, sales of all agricultural products are now permitted as of right throughout the calendar year so long as more than fifty percent of the sales during the primary harvest season are of the farm owner’s own products. See Von Jess v. Board of Appeals of Littleton, Land Court, Misc. Case No. 142973 (Jan. 4, 1991) (hereinafter von Jess), slip op. at 15 (“[T]he sale of products related to the four protected categories need reflect fifty percent production by the owner of the land . .. only during the months of June, July, August and September. In the remaining eight months the products may be obtained elsewhere so long as they are agricultural, horticultural, floricultural or viticultural in nature”).
The fifty percent rule thus allows a “facility” such as a farmstand to sell a different category of agricultural product than the farm itself produces. See id. However, the rule does not expressly address the issue presented here,[12] that is, whether the agricultural use exemption in §3 applies to a facility selling primarily non-farm “agricultural products”[13] where the facility owner, a farmer, raises crops at the facility locus but sells those crops at a farm stand facility located on a separate, independent parcel.
Arena seems to make two related arguments regarding the scope of the agricultural use exemption in §3. Arena first contends that a facility such as the Colonial Cone ice cream stand is entitled to an agricultural use exemption so long as a majority of the products sold during the summer months at any location by the owner or lessee of the land where the facility is located are grown or produced by that owner or lessee (emphasis supplied). In its supplemental memorandum Arena presents what appears to be a refinement of this first argument: that a facility may properly claim an exemption under §3 so long as a majority of products “for sale from the [l]ocus”[14] on which the facility is built constitute products grown or produced by the owner or lessee of that locus — again, regardless of whether those products are actually sold at the particular facility or elsewhere. Under either of Arena’s proffered constructions of §3, Colonial Cone satisfies the statute and specifically the requirements of the fifty percent rule, since the ice cream and dairy products sold at the Colonial Cone facility constitute less than five percent of the total sales of all “agricultural products” sold by Arena during the summer months (albeit primarily at the Fairhaven parcel farm stand), as well as less than fifty percent of the total sales of the Turnpike parcel’s “agricultural products” although the sales occur principally at the Fairhaven parcel.[15]
The town takes the position that §3 treats every locus as essentially a self-contained entity. The town therefore argues that in this case, the fifty percent rule requires that more than fifty percent of the products sold at the Colonial Cone facility during the summer months be produced by Arena at the Turnpike parcel itself.
While I do not find the town’s narrow reading of §3 very persuasive, for reasons mentioned below the resolution of this case does not depend on it. Keeping in mind that the purpose of §3 is to prevent land use restrictions from unduly interfering with the economic viability of agricultural enterprises in the Commonwealth, nevertheless, I cannot accept Arena’s interpretation of the scope of the statute and the fifty percent rule in particular.
Section 3 states that no zoning ordinance shall prohibit, unreasonably regulate or require a special permit for “those facilities for the sale of produce and wine and dairy products, provided that. . . the majority of such products for sale, based on either gross sales dollars or volume, have been produced by the owner of the land on which the facility is located . . .” (emphasis supplied). The quoted language makes reasonably clear that §3 links “facilities” and “products,” that is, in order to meet the fifty percent rule, a majority of the produce, wine or daily products for sale at the “facility” in issue during the summer months must have been grown or produced by the person or entity owning or leasing the land on which the “facility” is located. See Eastham v. Clancy, 44 Mass.App.Ct. 901, 902 (1997) (“we agree with the trial judge that [the defendant] did not sustain his burden of proof that a majority of the products for sale [at the farm stand] were produced by him”).
Arena interprets §3 to focus on either the overall product sales of the owner or lessee of the locus where the facility in question is built, or on the use of the facility locus itself.[16] Such a construction cannot be accepted because it essentially ignores the statute’s *432 words, which make the “facility,” and not merely the locus or its lessee, a significant point of concern. See, e.g., Matter of Civil Investigative Deman Addressed to Yankee Milk, Inc., 372 Mass. 353, 358 (1977) (citing “established principle of statutory construction that every word in a statute should be given meaning”); Devaney v. Watertown, 13 Mass.App.Ct. 927, 928 (1982) (citing same principle). See also Maloney v. Boston Five Cents Sav. Bank FSB, 422 Mass. 431, 433 (1996) (court first looks to words of statute when interpreting statute’s meaning). Arena’s argument in the end seems to be that so long as a facility like the Colonial Cone ice cream stand sells an agricultural product, it can obtain an agricultural use exemption by piggybacking the facility onto the permissible agricultural use of its locus. The claim fails to grasp the point, established in cases considering whether certain facilities on or uses of land are “incidental” to the primary agricultural use, that just because the locus is subject to an agricultural use exemption does not mean every facility or activity on that locus also may benefit from the exemption. See Henry v. Board of Appeals of Dunstable, 418 Mass. 841, 844-47 (1994) (excavation and sale of 300,000 to 400,000 cubic yards of gravel over three year period from 5-acre area of 19-acre parcel devoted to tree farm was not incidental to the agricultural use of the larger parcel and not entitled to agricultural use exemption under §3). Compare Modern Continental Const. Co., Inc. v. Building Inspector of Natick, 42 Mass.App.Ct. 901, 902 (1997) (slaughterhouse for butchery of animals actually raised on the plaintiffs farm is primarily agricultural in purpose and entitled to agricultural use exemption). Cf. Eastham v. Clancy, supra, 44 Mass.App.Ct. at 902 (operation of greenhouse and farm stand enjoined where agricultural use was not primary use of parcel, and where trial judge found only small percentage of produce and flowers sold at farm stand was produced on property).
The Colonial Cone ice cream stand does not satisfy the fifty percent rule in §3. Far less than a majority of the products actually sold at the Colonial Cone facility during the summer months are produced by Arena, the lessee, either on the Turnpike parcel or at any other location; what is principally sold at Colonial Cone is ice cream, and the ice cream comes from an unrelated manufacturer in Connecticut.[17] Cf. Building Inspector of Peabody v. Northeast Nursery, Inc., 418 Mass. 401, 405 (1994) (selling of trees and bushes, planted and nurtured elsewhere and delivered to premises ready for sale, did not constitute “agriculture” or “horticulture” within the meaning of §3). Nevertheless, it should be clear that nothing in this opinion bars Arena from seeking the protection of the agricultural use exemption in §3 for its Colonial Cone ice cream operation if it were to increase the quantity of Arena’s farm products sold at that facility so as to account for more than fifty percent of Colonial Cone’s sales during the summer months.
ORDER
For the foregoing reasons, the defendants’ for summary judgment is denied, and the plaintiffs’ motion for summary judgment is allowed.

See attached plot plan.

All figures relating to sales and percentages are for the years 1995 and 1996.

Arena sells more than ninety percent of the Turnpike parcel’s crops to the public, and more than fifty percent of these sales occur during the months of June, July, and August.

Other than the ice cream and daily products, Colonial Cone sells cut flowers grown on the Turnpike parcel.

June, July, August and September.

Overall, the ice cream and dairy products sold at the Colonial Cone, considered as a percentage of Arena’s combined sales from both the Fairhaven and Turnpike parcels, is less than five percent.

The Colonial Cone sells some fruit toppings made from Arena’s fruit, but the record does not reveal from which parcel the fruit comes.

Arena did not appeal board of appeals’ decision.

Although Arena nowhere argues that its two parcels should be construed as "one parcel” for the purposes of §3, Arena does describe the two parcels as “separated by a public way.” Arena’s choice of words may demonstrate a wish to stretch the meaning of “land divided by a public . . . way” to include land separated by a public way. No synonym, however, has the power of cartography: the parcels are not contiguous at any point, and they are separated not only by the public way, but also by a number of other lots with no connection to Arena.

The parties properly do not dispute that the ice cream and dairy products sold at the Colonial Cone facility qualify as “agricultural products" within the scope of §3. See p. 7 above, and cases cited.

Supplemental Memorandum in Opposition to Plaintiffs’ Motion for Summary Judgment [Supplemental Memorandum], p. 4.

See above and note 6.

To reiterate what was summarized at the outset of this discussion: Arena’s first and more general argument about the meaning of §3 looks only at whether a majority of product sales — in the aggregate and at any location — by the owner or lessee of the land on which the facility in question is built relate to or derive from products grown or produced by that owner or lessee. The second, more narrow interpretation advanced by Arena considers only whether a majority of the product sales attributable to the facility locus — again, the sales taking place at any location — constitute sales of agricultural or farm products grown or produced by the owner or lessee of that locus. (On the second point, in Arena’s words: “the [ljocus is what is at issue, not simply the activities of Colonial Cone.” [Supplemental memorandum, p. 2].)

This is the reason I do not need to resolve definitively whether, as the town asserts, §3 requires a majority of products sold at a particular facility to have been produced at the facility locus itself: even if the statute is read broadly to extend the agricultural use exemption to a facility where a majority of the agricultural products sold are grown or pro *433 duced by the facility’s owner at another location, Arena cannot satisfy the more generous construction insofar as the Colonial Cone ice cream stand is concerned. In response to the towns argument, however, I note, that the Land Court’s Von Jess opinion appears to adopt these broader interpretation of §3 described here. See Von Jess, supra, slip op. at 15. I also note that such an interpretation would appear to take into account what Arena may be suggesting is a reality, viz., that many farmers own unconnected parcels of land each of which grows a limited assortment of crops, and that to restrict a farm stand “facility” to selling the produce of that particular parcel would unduly constrict the scope of protection for agricultural enterprises which §3 was intended to provide.