WILLIAM F. PRIME & others[1] vs. ZONING BOARD OF APPEALS
OF NORWELL & others[2]; CAROLYN AUWERS AMMON &
others,[3] interveners (and a companion case[4] ).

No. 96-P-638.

Suffolk. March 11, 1997. - June 9, 1997.

Present: DREBEN, GILLERMAN, & FLANNERY, JJ.

*Zoning,* By-law, Agriculture, Special permit. *Agriculture. Words,* "Accessory use."

A Land Court judge correctly concluded that a proposed farm stand, although not an existing structure, was protected by the provisions of G. L. c. 40A, § 3, from unreasonable regulation by ordinance or by-law. [799-800]

This court concluded that a board of zoning appeals may require special permits for a new farm stand on agricultural land in a residential district under the applicable by-laws pertaining to primary agricultural uses and locuses within an acquifer protection district, but any conditions imposed may not be unreasonable or designed to prohibit the operation of the farm stand, in accordance with the provisions of G. L. c. 40A, § 3. [800-803]

CIVIL ACTION commenced in the Superior Court Department on July 19, 1991.

CIVIL ACTION commenced in the Land Court Department on July 22, 1991.

The cases were consolidated for trial in the Land Court Department and were heard by *Peter W. Kilborn,* J., sitting under statutory authority.

*Kenneth H. Tatarian* for Carolyn Auwers Ammon & others.

---

[1]Priscilla M. Prime and Ronald Simons, with Simons doing business as R & C Farms.

[2]The town of Norwell and the building inspector of Norwell.

[3]See note 5, *infra.*

[4]Carolyn Auwers Ammon & others *vs.* Zoning Board of Appeals of Norwell & others.

*Robert J. Sherer (John T. Thomson* with him) for William F. Prime & others.

*Robert E. Galvin* for Zoning Board of Appeals of Norwell was present but did not argue.

*Tara Zadeh,* Special Assistant Attorney General, & *Christine McCann* for the Massachusetts Department of Food and Agriculture, amicus curiae, submitted a brief.

GILLERMAN, J. These appeals are made up of two cases: one is an appeal from a judgment nullifying the decision of the Norwell zoning board of appeals (board) entered in the Superior Court; the other is an appeal from a judgment entered in the Land Court on a petition for declaratory judgment. The cases were consolidated for trial in the Land Court, with the Land Court judge designated a justice of the Superior Court for purposes of hearing and deciding the cases. The judge made extensive findings of fact and rulings of law.

Both cases involve a proposal to construct and operate a farm stand for the sale of farm products on certain farm land in Norwell (locus). The board had subjected the locus to site plan review and had allowed the operation of the farm stand subject to a number of conditions. The abutters' complaint (in the Superior Court) sought to overturn the decision of the board granting site plan review and to have a determination that the farm stand was not a permitted use on the locus. The Land Court case (brought by Simons and the Primes) also was an appeal from the board's decision and further sought a declaration that the locus is protected under G. L. c. 40A, § 3, and that the locus is not subject to regulation by the board and may be used as a farm stand as matter of right. The effect of both final judgments was to permit the unconditional operation of the farm stand. Seeking the unconditional proscription of the use of the locus as a farm stand, the abutters appeal from the judgments entered in both actions.[5]

The material facts are not in dispute. The locus is a part of a seventy-two acre farm in a single-family residence district. The farm is owned by William F. Prime and Priscilla M.

[5]In addition to Carolyn Auwers Ammon, the abutters' group includes Robert L. Ammon, Michael Sparks, Mary Jane Sparks, John R. Reilly, Joanne A. Reilly, William Bennett, Anita Bennett, George Reekie, and Doris Reekie. The judge found that the standing of the abutters was not raised below, and the point is waived. See *Royal Indem. Co.* v. *Blakely,* 372 Mass. 86, 88 (1977).

Prime; it has been farmed continuously since the early 1700s. Since 1986, approximately thirty-four acres have been leased to Ronald Simons for agricultural purposes.

Simons proposes to construct a farm stand on the locus, forty feet by sixty feet and covered by a tent, about sixty feet back from Grove Street. Trees are to be removed from the locus, five thousand yards of gravel and fill will bring the locus to grade, and bituminous concrete will be put down to create driveways and parking facilities. A water supply and electricity will be available at the site. Simons intends to sell agricultural products, flowers, plants, and vegetables grown by him at the locus and elsewhere, as well as chemicals, pesticides, herbicides, and fertilizers, mulches, peat moss, composts, and manure, and Christmas trees and wreathes.[6]

An aquifer runs under the locus, and § 4300 of the by-law places the locus within an aquifer protection district. Under § 4351 of the by-law applicable to such districts, a special permit is required for any use "involving secondary usage or storage of toxic or hazardous materials in quantities greater than normally associated with usual household use."

The judge rendered two decisions in these proceedings. In his first decision, the judge annulled the decision of the board, which had required site plan review and imposed numerous conditions. The judge ruled that, because the locus was in a single-family residence district, § 1510 of the by-law "did not require Mr. Simons to apply for site plan review." This effectively disposed of all the issues raised by the Superior

---

[6]The judge held that Simons was not entitled to sell bread, garden tools and garden equipment and supplies, or Christmas ornaments. Simons has not filed a cross appeal, and the propriety of those rulings is not before us.

We note also that agricultural products produced by others are subject to the limitations provided in G. L. c. 40A, § 3. A 1989 amendment to § 3, St. 1989, c. 590, added the proviso that during the months of June, July, August, and September, or during the harvest season of the primary crop raised on the land, the majority of products for sale must have been produced by the owner or lessee of the land on which the facility is located. This amendment has been incorporated into the town's by-law, and we are informed that counsel are in agreement that the amendment is applicable to this case.

Court case, and a judgment to that effect was entered on February 23, 1995.[7]

In the declaratory judgment action (the Land Court case), the judge ruled that the board's requirement that the construction of a farm stand on the locus was subject to two special permits — one under the by-law provision regarding agricultural pursuits and the second under the by-law provision regarding an aquifer protection district — conflicted with the overriding provisions of G. L. c. 40A, § 3, which we set out in the margin.[8] Accordingly, the judge nullified the special permit requirements. Other rulings of the judge are discussed below. The principal issue in the case is whether, or the extent to which, the use of the locus for a farm stand is subject to regulation by the board in view of the limitations on local regulation of farm land imposed by c. 40A, § 3.

*Discussion.* Section 2313(b) of the by-law provides that "[a]gricultural pursuits (and buildings necessary to such pursuits) in accordance with M.G.L. Chapter 40A, Section 3 as amended," are "permitted accessory uses," or, if such pursuits are a *principal* use, a special permit from the board is required under § 2316(a).[9] An "accessory use" is defined in art. V as "[a] use subordinate to and customarily incidental to the principal use."

The judge found as a fact that the principal uses of both

_____

[7]The appellants (the abutters) do not argue that the judge was wrong on the issue of site plan review. They merely pray for the entry of a judgment declaring that the board was obligated to deny the application for a favorable site plan review. This is not an appellate argument, and we do not consider the point.

[8]Section 3, as amended through St. 1989, c. 590, provides, in material part, as follows: no "ordinance or by-law shall . . . prohibit, unreasonably regulate or require a special permit for the use of land for the primary purpose of agriculture . . . nor prohibit, or unreasonably regulate, or require a special permit for the use, expansion or reconstruction of *existing structures* thereon for the primary purpose of agriculture . . ." (emphasis added).

Note that the first clause protects the use of land, while the second clause protects the use of existing structures.

[9]The record suggests that, under the by-law, when Simons's application process began in April, 1991, "[a]gricultural pursuits (and building necessary to those pursuits)" were permitted uses in residential districts and did not require a special permit. The version of the by-law quoted in the text reflects an amendment dated May 1, 1991. The board's decision is dated July 1, 1991. Nevertheless, there is no disagreement among the parties that the amended by-law applies to this case.

the farm and the locus are "agricultural pursuits." Thus, under the by-law, the agricultural use of the farm stand on the locus requires a special permit under § 2316(a). It is also undisputed that a special permit is required under the by-law because the locus is within an aquifer protection district.

What is in dispute is the judge's ruling that the farm stand, although not an existing structure,[10] is nevertheless protected by c. 40A, § 3, thereby nullifying the by-law requirements of special permits. The judge concluded, citing *Cumberland Farms of Conn., Inc.* v. *Zoning Bd. of Appeal of N. Attleborough*, 359 Mass. 68, 74-75 (1971), and *Kirker* v. *Board of Appeals of Raynham*, 33 Mass. App. Ct. 111, 114-115 (1992), that § 3 is not limited to existing structures, and the proposed farm stand comes within the protection of § 3 as a "facilit[y] for the sales of produce, wine and dairy products" — the "farm stand exception."

The abutters challenge these rulings on the ground that the farm stand is outside the protection of § 3 because (1) it is no more than a "retail sales structure" not "essential" to the primary purpose of agriculture and (2) the protection of § 3 extends only to existing structures.

We reject the abutters' first argument. Their suggestion is that a "retail" operation is inconsistent with the agricultural use of the land, and therefore not within § 3. The argument has been answered in *Cumberland*, 359 Mass. at 76, where substantially the same argument was made: "All agriculture conducted for profit is commercial in some degree."

As to the second argument, we conclude that the board may require that Simons obtain special permits for the farm stand, but only upon reasonable conditions, as described below.

The *Cumberland* case, upon which the judge relied, involved the predecessor statute to the present § 3: G. L. c. 40A, § 5. See St. 1962, c. 340. Section 5 protected the expansion of existing, nonconforming buildings and land used primarily for agriculture. The agricultural business of Cumberland was expanding, and a new barn was needed to provide shelter for the increasing size of the herd of its cows. If a new barn was prohibited, Cumberland would be unable to expand

---

[10]It is not disputed that the farm stand is a "structure" within the meaning of c. 40A, § 3.

its agricultural activities. The zoning board of appeal refused to approve the barn permit because of its "policy . . . to allow no expansion of Cumberland's agricultural use or facilities . . . ." 359 Mass. at 75.

The court observed that the board's refusal to permit the construction of a new barn in "the New England climate . . . may effect prohibition of dairy *land expansion*" (emphasis in original).[11] 359 Mass. at 73. The case was remanded to the board for further consideration of the application for a barn permit.

The *Cumberland* opinion does not suggest, however, that Cumberland was free of all permit requirements. To the contrary, the court observed that, while the construction of the new barn could not, in the circumstances, be prohibited by a zoning by-law, "it may be *regulated*" (emphasis in original). 359 Mass. at 74-75.[12] This was so because § 5 (now § 3) did not preclude local regulation of a proposal for *new* farm structures; moreover, because the local regulation of new structures may adversely and improperly affect the agricultural use of the land (as in *Cumberland)*, only regulations that are reasonable may be permitted in order to assure no material diminution of the protection provided by § 3 for the continued use of agricultural land.

The *Kirker* decision, too, involved a proposal for a new "steel garage or shed . . . ostensibly for farming purposes." 33 Mass. App. Ct. at 111. The board of appeals had denied a building permit for the shed on the ground that the shed would be "detrimental to the public good," *id.* at 114, and because of the board's apprehension that the proposed shed was intended improperly for use in Kirker's nonconforming construction business. The first reason was legally insufficient because the board could not refuse a permit merely because the board "would prefer another use of the land or no use." *Ibid.*, quoting from *Cumberland*, 359 Mass. at 75. The second

---

[11]Here the court was referring to a clause of § 5 — carried forward into the present § 3 — which protects agricultural land. See note 8, *supra*. That is to say, the court's holding indicates that the second clause of § 3 may not be applied to prohibit the agricultural use of land protected by the first clause.

[12]The court stated that the local regulation "must bear a reasonably direct relation to significant considerations of public health, morals, safety, and welfare, based on findings justified by substantial evidence." 359 Mass. at 75.

reason was another matter; § 3 cannot be used "as a pretext for unlawful enlargement of nonconforming uses." 33 Mass. App. Ct. at 115. The board's decision denying the permit was annulled, and the case was remanded to the board for further consideration of the permit application.

The teaching of *Cumberland* and *Kirker* is that the application of a by-law to a *new* agricultural structure — either by denying arbitrarily any required permit or by imposing unreasonable conditions upon its issuance — is inconsistent with the § 3 guaranty of protection of the use of land for agricultural purposes; unless the permit application is a sham intended to conceal an unlawful purpose,[13] § 3 precludes that result and requires the board to consider an application for the permit. "In other words, the application of the by-law . . . [may not] nullify a protected use." *Trustees of Tufts College* v. *Medford*, 415 Mass. 753, 763 n.11 (1993).

Absent these settled exceptions, bona fide proposals for new structures may be reasonably regulated, and a special permit may be required. The provision of § 3 precluding a requirement of a special permit for *existing* agricultural structures remains intact. Local regulation of a *new* structure must take into account the factors mentioned in *Cumberland*, see note 12, *supra,* and the legislative purpose in enacting § 3: "to counteract the increasingly restrictive effect of various zoning by-laws upon the conduct and expansion of agriculture within the State." *Cumberland*, 359 Mass. at 73-74.

The board does not lack the power to impose reasonable regulations, including a permit requirement, upon the proposed structure, as *Cumberland* emphasizes. Of course, the imposition of conditions would be subject to de novo review as outlined in the *Cumberland* decision, 359 Mass. at 75.

Essentially the same reasoning applies, and the same conclusions obtain, with regard to the board's requirement of a special permit because the locus is within an aquifer protection district. The protection of an aquifer is a valid public interest. Compare *Goddard* v. *Board of Appeals of Concord*, 13 Mass. App. Ct. 1001 (1982) (protection of ground water is a valid public interest). But the special permit may not be

---

[13]There is no suggestion that Simons's proposal is a sham.

imposed unreasonably and in a manner designed to prohibit the operation of the farm stand, nor may the permit be denied merely because the board would prefer a different use of the locus, or no use. On this point, we note, the board has already spoken, the text of which we set out in the margin.[14] The regulatory conditions imposed by the board are manifestly reasonable, and no further comment is needed.

In 1980, the Commonwealth and the town purchased an Agricultural Preservation Restriction (APR) on the farm for $247,000. See G. L. c. 132A, § 11A. As to the APR, the restrictions imposed by the purchase may be enforced only by the holders of the APR. See G. L. c. 184, § 32. (The text of the APR, in par. f, also so provides.) As the judge held, the abutters have no standing on this issue.

Also without merit is the abutters' argument that the farm stand must be set back 300 feet from adjacent residences. The provision of the by-law they rely upon applies only to structures in a business district; the locus, as noted, is in a residential district.

The judgment entered February 23, 1995, in the Superior Court action annulling the board's decision to require site plan review is affirmed. See note 7 and accompanying text, *supra*. The judgment entered February 14, 1996, in the Land Court action is to be modified in accordance with this opinion to declare that the proposal for a new farm stand is subject to the special permit requirements of §§ 2316(a) and 4351 of the by-law; in all other respects, the judgment is affirmed.

*So ordered.*

---

[14]"To provide reasonable protection for the Aquifer, the applicants shall furnish to the Inspector of Buildings and/or his designee, the following:

a. lists of any and all chemicals and fertilizers which are used on products for sale at this stand.

b. schedules of applications of fertilizers and/or chemicals used at the locus."