Fabricant, J.
This action presents the question whether a lumber mill constitutes agriculture, so as to be exempt from local zoning pursuant to G.L.c. 40A, §3. The case is presently before the Court on cross motions for summary judgment. For the following reasons, each side’s motion will be allowed in part and denied in part, and judgment will enter enjoining the defendant from operating a sawmill on the site.
BACKGROUND
The defendant Michael Kovalchuk owns and resides on property located at 238 Main Street in the Town of Rowley (hereinafter referred to as “the site”). According to his affidavit, Kovalchuk has been “primarily engaged in forestry activity since 1976.” He purchased 2.4 acres of his present site in 1981. Minutes of the Town’s Zoning Board of Appeals meeting dated November 2, 1981, reflect that on that date Kovalchuk advised the Board that “he will sell lumber wholesale and retail and firewood — wanted to know if he needs permits for this type of business. Will not be a saw mill . . . but he will be using chain saw but with 2 acres to work on he will try to keep away from neighbors because of possible annoyance.” The Board at that time determined, and advised the defendant, that no license was required for the business he described.
In 1985 the Town adopted its present zoning bylaw, which divides the town into four districts and places the site in the Central District. Under §1.2.1 of the by-law, all structures and uses in each district are limited to those specifically authorized in the by-law. Under §3.0, permitted uses in the Central District include residential, home offices, and “retail business and service where all business is conducted within a structure.” Certain other uses are allowed by special permit. Lumberyards, sawmills, and manufacturing facilities are not permitted in the Central District.
On November 8, 1995, the defendant applied to the Board for a special permit to build a second barn on his property, which then contained his house and one barn, to be used “for the storage of materials, vehicles, and equipment associated with the business.” The Board characterized the application as one “to expand an existing nonconforming business.” It conducted public hearings on the application on a series of dates between December 5, 1995, and February 1, 1996. At the outset of the hearings, the defendant informed the Board that his business “started out as cord wood with some small amount of specialty lumber sales. Over the years both portions of the business grew. Recently the cord wood business has decreased and the lumber business has increased. While the cord wood business did not need inside storage, the lumber is more susceptible to the weather and should be placed under cover. To process the lumber, he needs to bring in a ‘portable sawmill.’ In the winter, this should be operated under cover, not out in the weather.”
The Board heard from abutters both in favor of and opposed to the application. Opponents cited noise from the existing sawmill operation, fire hazard from a kerosene fired wood drying kiln being operated in the barn without a permit from the fire department, traffic hazards from large vehicles entering and leaving the site, and lack of parking for customers and employees. Kovalchuk presented the Board with evidence of his operation of the lumbering business prior to the adoption of the zoning by-law, as well as arguments that his business was exempt from zoning as an agricultural use, pursuant to G.L.c. 40A, §3.
On February 8, 1996, the Board voted to deny the application and to make certain findings. The Board found that “a firewood business and a small lumber wholesale/retail business at this location” was a “grandfathered use,” and that growth in both busi *396 nesses “is permitted.” It further found, however, in paragraphs numbered (3) and (4), that “[ljimited cutting, using a chain saw, was an anticipated use and was permitted” by the Board in 1981, but that “the use of a ‘Saw Mill,’ whether fixed or portable, is not a permitted use,” and that “[n]o evidence has been supplied of any Fire Department Permit for the operation of a ‘lumber Diying Kiln’ which in the opinion of the Board is not a grandfathered permitted use” (emphasis in original). Further, the Board found the agricultural use exemption inapplicable because the site did not contain five acres, and because the Board construed that provision as limited to “expansion or reconstruction of existing structures not the construction of a second (new) barn” (emphasis in original). Kovalchuk did not seek judicial review of the denial of the special permit application, and did not construct the second barn.
On July 16, 1996, Kenneth Ward, the Town building inspector, inspected the site in Kovalchuk’s absence and saw “the sawmill and lumber business being operated.’’[1] Ward left a “Stop Work Order” attached to the door. The order was on a form headed:
VIOLATION NOTICE STOP WORK
THIS STRUCTURE AND/OR PREMISES HAS BEEN INSPECTED AND THE FOLLOWING VIOLATIONS OF THE BUILDING CODE AND/OR ZONING ORDINANCE HAVE BEEN FOUND:
Four numbered lines follow, in which Ward wrote four phrases: “violation ZBA Decision # 96-05,” “Sections 3 & 4,” “Zoning By-Law — Section 3.0,” “not permitted use.” The form concludes with the instruction that “[y]ou are hereby notified that no additional work shall be undertaken upon these premises, or the premises occupied until the above violations Eire corrected." No information regarding any appellate rights or other procedures appears on the form. The defendant did not appeal the stop work order to the Board pursuant to G.L.c. 40A, §8.
At argument on the present cross-motions, the Town’s counsel explained that Ward’s entries on the four numbered lines were intended to be read as two pairs, with “section 3 & 4" referring to paragraphs 3 and 4 of the Board’s findings, and ’’not permitted use" referring to the Town’s position that activities being conducted on the site were not permitted in the Central District under §3.0 of the zoning by-law.
Building inspector Ward returned to the site on July 17 and 18, 1996, “to talk to the Defendant,” but found him not present. On July 18, 1996, however, Kovalchuk telephoned Ward and, according to Ward’s affidavit, “told me that he would not use the sawmill until he had spoken with me.”
Kovalchuk did not operate the sawmill between July 16 and July 30, 1996. On July 30, 1996, he purchased 4.4 acres of land abutting the 2.4 acres he had previously owned, bringing the total area of the site to 6.8 acres. He did so, according to his affidavit, for the specific purpose of bringing the site within the agricultural use exemption of G.L.c. 40A, §3. On the same date he resumed using the sawmill, and contacted Ward and asked him to visit the site on August 1, 1996. Ward did so, but found the defendant not present, and the defendant did not respond to the note Ward left. Ward inspected the site again during the week of August 5, 1996, and found that the defendant “was still operating a sawmill and lumberyard. ”
On August 28, 1996, in response to a citizen call, a Rowley police officer visited the site and observed an employee of the defendant “using a mill saw.” The employee ceased his activity at the officer’s direction. Later that day, however, Kovalchuk called the police station and indicated that he would continue his use of the saw unless restrained by court order.
On September 25, 1995, the Town filed this action, seeking preliminary and permanent injunctive relief and fines. Its amended complaint, filed on October 3, 1996, sets forth seven counts, asserting violations of §3.1 of the zoning by-law, the February 1996, decision of the Board, the stop work order, and certain regulations of the state Fire Marshall, 527 C.M.R. §17.00 et seq. The Town’s application for a preliminary injunction was denied on April 17, 1997 (Merrick, J.).[2]
The defendant, according to his affidavits, holds a License to Harvest Forest Products from the Department of Environmental Management, a Farm Certificate of Registration from the Registry of Motor Vehicles, and a Certificate of Nursery Inspection from the Department of Food and Agriculture, Bureau of Farm Products and Plant Industries. Copies of certificates reflecting these licenses show dates in 1996 and 1997. He holds “timber rights” to 122 acres of forest land in Rowley, and another 600 acres in Ashfield, under leases dated in January through March of 1996. He makes his living, according to his affidavits, by “managing" those lands, harvesting forest products from them pursuant to forest cutting plans approved by the Department of Environmental Management on dates in 1996 and 1997, and “convert(ing) the raw timber to lumber products.”
He describes the operations conducted on the site as the “conversion of the forest product to lumber product” and “marketfing] the converted raw timber.” He has been “converting timber to lumber on this site since 1991.” The “conversion” process, as he describes it, is conducted “with the use of a ‘Woodmizer’ having an eighteen horsepower gasoline engine . . . equipped with a muffler that is operational at all times.” According to his affidavits, he brings cut timber to the site by truck, unloads, sorts, and mills the timber, stacks some of the rough-cut lumber outdoors to air dry, and finishes and dries some of it in a kiln. He sells the rough-cut lumber from where it is stacked outdoors, *397 and sells the finished and kiln-dried lumber from inside the barn.
Kovalchuk states that “a majority” of the timber milled on the site “I cut or cause to be cut on land I hold timber lease agreements on.” He provides figures documenting that assertion for 1996 and 1997, but not for earlier years; it appears at least by implication that in past years his business on the site consisted largely of milling timber purchased from others and marketing the resulting lumber.
In October 1996, the defendant replaced his kerosene fired “salamander” kiln heater with an electrical heating unit. On various dates thereafter, he requested inspection by the fire department. In February 1997, after correction of various violations, the fire department issued a “permit for a fire alarm system.”
Also in October 1996, building inspector Ward, along with the Town’s counsel, inspected the site. At that time, according to his affidavit, Ward observed no harvesting activily on the site, limited evidence of recent harvesting activity on the Rowley lands to which the defendant leases timber rights, and large quantities of lumber on the site. Ward inspected the site again in January of 1997, and observed “even more lumber stacks than were present in October.” Based on these facts, along with the relatively recent dates of the leases and timber cutting plans, and the distance between the site and the Ashfield location (approximately 130 miles), the Town challenges the credibility of Kovalchuk’s assertions as to the source of the timber he mills, and suggests that much or even most of the defendant’s milling operation involves timber trucked to the site by other harvesters.
In a supplemental affidavit dated January 28, 1998, Kovalchuk responds to inspector Ward’s most recent observations by supplying a “timber cutting plan" for the site, along with “recent photographs of the harvest of timber off the land” at the site. He also asserts that “(o]n said parcel I maintain a certified nursery for reforesting stock.”
DISCUSSION
This Court grants summary judgment where there are no genuine issues of material fact and the summary judgment record entitles the moving party to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 420 (1983); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating that there is no genuine issue of material fact on every relevant issue. Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). A party moving for summary judgment who does not bear the burden of proof at trial may demonstrate the absence of a triable issue either by submitting affirmative evidence negating an essential element of the nonmoving party’s case or by showing that the non-moving party has no reasonable expectation of proving an essential element of its case at trial. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991).
Once the moving party establishes the absence of a triable issue, the party opposing the motion must respond with evidence establishing the existence of a genuine issue of material fact. Pederson, 404 Mass. at 17. The nonmoving party cannot defeat the motion for summary judgment by resting on his or her pleadings and mere assertions of disputed facts. LaLonde v. Eisner, 405 Mass. 207, 209 (1989). Where both parties have moved for summary judgment and “in essence there is no real dispute as to the salient facts or if only a question of law is involved,” summary judgment shall be granted to the party entitled to judgment as a matter of law. Cassesso, 390 Mass. at 422.
1. Count I.
In Count I of its amended complaint, the Town alleges that Kovalchuk’s business is a use not permitted by §3.0 of the zoning by-law, so that his operation is in violation of §1.2.1 of the by-law. The Town seeks enforcement of the zoning by-law pursuant to G.L.c. 40A, §7.
Section 3.0 of the Town’s zoning by-law authorizes, in addition to uses specifically permitted in the Central District, those “(u]ses exempt as listed in Section 3.7.1.2.” That section, in turn, authorizes “[agriculture, floriculture, and viticulture, provided that such uses shall be limited to parcels of land containing at least five (5) acres.” This exemption follows directly from G.L.c. 40A, §3, which provides in pertinent part:
No zoning ordinance or by-law shall . . . prohibit, unreasonably regulate, or require a special permit for the use of land for the primary purpose of agriculture, horticulture, floriculture, or viticulture; nor prohibit, or unreasonably regulate, or require a special permit for the use, expansion, or reconstruction of existing structures thereon for the primary purpose of agriculture, horticulture, floriculture, or viticulture, including those facilities for the sale of produce, and wine and dairy products, provided that. . . The majority of such products for sale . . . have been produced by the owner or lessee of the land on which the facility is located, except that all such activities may be limited to parcels of more than five acres . . .
The question, then, is whether the “primary purpose” of the defendant’s operation is “agriculture, horticulture, floriculture, or viticulture” within the meaning of the exemption provided by both the by-law and the statute. See Town of Eastham v. Clancy, 44 Mass.App.Ct. 901, 902 (1997). Neither source provides a definition of these terms. Sources of definition appear, however, in other statutes and in case law construing c. 40A, §3. See generally, Building Inspector of Mansfield v. Curvin, 22 Mass.App.Ct. 401, 403 *398 (1986). Kovalchuk relies in particular on G.L.c. 128A, §1A, which provides:
“Farming” or “agriculture” shall include farming in all its branches and the cultivation and tillage of the soil, dairying, the production, cultivation, growing and harvesting of any agricultural, aquacultural, floricultural or horticultural commodities, the growing and harvesting of forest products upon forest land . . . and any forestry or lumbering operations, performed by a farmer, who is hereby defined as one engaged in agriculture or farming as herein defined, or on a farm as an incident to or in conjunction with such farming operations, including preparations for market, delivery to storage or to market or to carriers for transportation to market.[3]
On the undisputed facts as recited supra, it is clear that the operations conducted on the site, aside from the defendant’s own residence, consist primarily, ifnot entirely, of milling and marketing lumber that is grown and harvested elsewhere. These operations involve neither “cultivation and tillage of the soil,” nor the “production, cultivation, growing, and harvesting of any agricultural . . . commodity.” Nor do the facts indicate that the defendant’s use of the site involves any “growing and harvesting of forest products upon forest land”: indeed, nothing in the record indicates that the site includes any forest land, or that any growing or harvesting occurs there.[4]
Kovalchuk focuses on the phrase “forestry or lumbering operations," and notes in particular that the statute includes within that phrase “preparations for market.” He argues that his saw-milling serves to prepare lumber for market, and that his operations are “performed by a farmer” in that he is a farmer by virtue of his harvesting of timber on land elsewhere. The argument fails, however, to address the statutory limitation requiring that such operations be performed “as an incident to or in conjunction with such farming operations.”[5] See Henry v. Board of Appeals of Dunstable, 418 Mas. 841, 843 (1994).[6] As the Supreme Judicial Court observed in that case:
Uses which are “incidental” to a permissible activity on zoned property are permitted as long as the incidental use does not undercut the plain intent of the zoning by-law. An accessory or “incidental” use is permitted as “necessary, expected, or convenient in conjunction with the principal use of the land." Determining whether an activity is an “incidental” use is a fact-dependent inquiry, which both compares the net effect of the incidental use to that of the primary use and evaluates the reasonableness of the relationship between the incidental and the permissible primary uses . . . [T]he focus is on the “activity itself and not. . . such external considerations as the property owner’s intent or other business activities.
The word “incidental” in zoning by-laws or ordinances incorporates two concepts: “It means that the use must not be the primary use of the property but rather one which is subordinate and minor in significance . . . But ’’incidental," when used to define an accessory use, must also incorporate the concept of reasonable relationship with the primary use. It is not enough that the use be subordinate; it must also be attendant or concomitant.
Id. at 844-45 (citations omitted).
Here, on the undisputed facts presented in the record, the milling and lumbering operation Kovalchuk conducts on the site cannot reasonably be characterized as “incidental” to any farming operations conducted on the site, or even to such operations conducted anywhere else. The lumbering operation is neither subordinate nor minor; it is the principal, indeed the only substantial use of the site aside from Kovalchuk’s family residence. It is related to Kovalchuk’s harvesting activities elsewhere in the sense that those activities provide its source of raw materials, but that type of relationship is obviously not what is meant in the quoted passage; the same relationship could be said to exist between a meat packing plant in one location and a cattle ranch in another, or between a textile mill on one site and a cotton plantation or sheep farm on another. The relationship required, rather, is one of “necess[ity], expectation], or convenience].” Id.; see also Old Colony Council, Boy Scouts of America v. Zoning Board of Appeals of Plymouth, 31 Mass.App.Ct. 46, 48-49 (1991). No doubt a timber harvesting operation needs a market for its raw product, as these other agricultural operations need outlets for theirs. But given that the cultivation and harvesting of timber occurs away from this site (some of it 130 miles away), there is no apparent necessity or convenience in having the processing and marketing operation located in a place where it conflicts with applicable zoning regulations.[7] Cf. Jackson v. Building Inspector of Brockton, 351 Mass. 472, 478 (1966) (dehydration of manure permissible as accessory to farm only to extent that manure either derived from or would be used on the site).
Kovalchuk also invokes the so-called “farm stand” provision of c. 40A, §3, which includes within the category of protected activities “facilities for the sale of produce,” provided that “during the harvest season of the primary crop raised on land of the owner or lessee," the “majority of such products for sale . . . have been produced by the owner or lessee of the land on which the facility is located." The obvious purpose of this provision is to permit a farmer to operate a facility on the farm site for retail sales of the farm’s products. The cases have construed this provision in light of that obvious purpose, limiting its application to sites that are primarily used for agriculture, and, on such sites, to retail sales of produce the maj ority of which is grown on site. Town of Eastham v. Clancy, 44 Mass.App.Ct. *399 at 902; see also Prime v. Zoning Board of Appeals of Norwell, 42 Mass.App.Ct. at 798. Here, the site is not used primarily for agriculture, and none, or virtually none, of the lumber sold on the site derives from timber grown there. The farm stand provision thus has no application to these facts. Indeed, if that provision were applicable here, it would be difficult to determine why it would not also apply to a supermarket selling produce grown on distant land owned or leased by its corporate owner, or similarly to a fast-food chain outlet selling hamburgers derived from cattle raised on its owner’s distant land.
Kovalchuk’s operation is not “agriculture” within the meaning of c. 40A, §3, and is not exempt from the Town’s zoning regulation.[8] The Town is therefore entitled to summary judgment on Count I of its amended complaint.
2. Counts II and III.
Counts II and III of the amended complaint assert that Kovalchuk’s operation of the sawmill and kiln violate the decision of the Zoning Board of Appeals. As Kovalchuk points out, that decision denied a special permit for the construction of a second barn. The Town does not allege, and nothing in the record suggests, that Kovalchuk has constructed the proposed barn in defiance of that decision.[9] Accordingly, the undisputed facts establish that Kovalchuk has not violated the Board’s decision, and Kovalchuk is entitled to summary judgment on these counts of the amended complaint.[10]
3. Counts IV and V.
Counts IV and V of the amended complaint assert that Kovalchuk has violated the Building Inspector’s “stop work" order by continuing his operation of both the sawmill and the kiln. The Town seeks enforcement of the stop work order pursuant to c. 40A, §7.
Kovalchuk responds by challenging the grounds on which the Building Inspector issued the order. Such a challenge is generally precluded by the aggrieved party’s failure to seek review before the Zoning Board of Appeal. See Quincy v. Planning Bd. of Tewksbury, 39 Mass.App.Ct. 17, 20 (1995) (“principles of exhaustion require that a person aggrieved by the action of a local zoning administrator . . . must first attempt to redress the grievance through the local board of appeals before seeking judicial review”). As Kovalchuk points out, however, tire stop work order provided no notice of any appeal rights, and failed even to clearly inform him that it would remain in effect until such time as the Building Inspector might approve the resumption of his operation. Rather, the order merely directed that work cease “until the above violations are corrected.” Moreover, as indicated supra, the order left considerable ambiguity as to identification of the violations requiring correction. Under the circumstances, Kovalchuk’s asserted belief that he was free to resume his operations once he had purchased the abutting land, so as to bring his ownership above the five acres required for agricultural use, cannot be considered unreasonable. Accordingly, the Court will consider his challenge to the order, despite his failure to seek review before the Board.
Kovalchuk’s challenge turns on the same arguments addressed previously with respect to counts I through III. For the reasons already discussed, the Building Inspector’s assertion of a violation of the Board’s decision was wrong, but his assertion of a violation of Section 3.0 of the zoning by-law was correct. Accordingly, the Town is entitled to summary judgment on Count IV. As to Count V, Kovalchuk asserts that the issue became moot upon his installation of the electric heater, and discontinuance of the kerosene fired “salamander” kiln, and the Town does not dispute that assertion.[11] Accordingly, Count Vwill be dismissed as moot.
4.Counts VI and VII.
Counts VI and VII of the amended complaint allege violations of 527 C.M.R. 17.00, etseq., in the operation of a lumberyard without a permit from the Town fire department, and of 527 C.M.R. §17.02(17) in the use of the kerosene fired “salamander” kiln. The parties agree that those regulations were repealed pursuant to Executive Order No. 384, effective January 10, 1997. Accordingly, these counts must be dismissed as moot.
ORDER
For the foregoing reasons it is hereby ORDERED that the plaintiff Town of Rowley’s Motion for Summary Judgment is ALLOWED as to Counts I and IV of the Amended Complaint and DENIED as to all other counts; defendant Michael K. Kovalchuk’s Motion for Summary Judgment is ALLOWED as to counts II and III of the Amended Complaint and DENIED as to all other counts, and Counts V, VI, and VII of the Amended Complaint are DISMISSED as moot. Judgment shall enter in the form of a permanent injunction barring defendant Michael K. Kovalchuk from operating a sawmill on the site.[12]

The impetus for Ward’s inspection appears to have been a July 12, 1996, letter from an attorney representing abutting landowners. The letter cited the Board’s decision, particularly its findings that “the 'Lumber Drying Kiln’ is not a grandfathered use, and the use of a ‘saw-mill’ either fixed or portable is not a permitted use.”

It appears that the motion was heard initially on October 7, 1996, and “sen[t] . . . back to the Town of Rowley for a considered review” (Peter Brady, J.).

A nearly identical definition appears at G.L.c. 111, §1. A similar but less expansive definition appears at G.L.c. 61A, §2.

Kovalchuk makes no serious attempt to characterize the harvesting and nursery functions referred to in his January, 1998, affidavit as his primary use of the site, or even as a significant portion of its use. On the contrary, the record clearly shows those activities to be an afterthought, adopted in response to the affidavits submitted by the Town in this action.

On its face, particularly in light of its punctuation, the statute might be thought to leave some doubt as to whether ‘‘as an incident to or in conjunction with” modifies both “by a farmer” and “on a farm,” or only the latter. The Supreme Judicial Court’s decision in Henry, however, reads it as applying to both.

Kovalchuk rests his argument heavily on the decision of the Superior Court in Roberts v. McNiff, Franklin County No. 89-004, March 15, 1990 (Cross, J.), along with subsequent opinions of officials of the Departments of Environmental Management and of Food and Agricultural relying on that decision. The Roberts decision, issued some four years before the Supreme Judicial Court’s decision in Henry, does not discuss whether the sawmill involved there was incidental to any agricultural operation. In that respect, it appears to be inconsistent with current law.

Presumably it is convenient for Kovalchuk to have his business where he lives, and on land he owns. Such convenience is not a function of the relationship between the saw mill and the harvesting operation, but is in the nature of “external considerations" that are not to be considered. Henry v. Board of Appeals of Dunstable, 418 Mass. at 845.

As this conclusion does not depend on whether Kovalchuk does or does not personally or through his employees harvest a majority of the timber he mills and sells, summary judgment is not precluded by any dispute between the parties on this point.

The Town’s reliance, apparently, is not on the Board’s decision denying the special permit, but on paragraphs three and four of the findings made by the Board as the basis for that decision. Those findings reflect the Board’s interpretation of the zoning by-law as prohibiting Kovalchuk’s continued operation of the sawmill and kiln. If the findings are correct, then the Town has a cause of action under §7 of c. 40A to enforce the by-law, as it has asserted in count I. Such findings do not, however, impose any duty or prohibition, the violation of which would create an independent cause of action.

Kovalchuk devotes a substantial portion of his memorandum to arguing that the Board’s decision was legally erroneous under Kirker v. Board of Appeals of Raynham, 33 Mass.App.Ct. 111, 114-15 (1992). The argument is precluded by his failure to seek review of the Board’s decision under G.L.c. 40A, §17. See Almeida v. Travelers Ins. Co., 383 Mass. 226, 229 (1981). It is worth noting, however, that the decision in Kirker rested on the property owner’s operation of “a bona fide farm” on the site. See also Prime v. Zoning Board of Appeals of Norwell, 42 Mass.App.Ct. 796, 802 (1997). Here, as indicated in the discussion of count I, Kovalchuk does not operate a farm, or any activity incidental to a farm, on the site.

The Town apparently does not press its claim, asserted in its amended complaint, for fines for past violations.

The Town apparently concedes that Kovalchuk's lumber sales activity on the original 2.4 acre site is protected as a preexisting nonconforming use. Accordingly, no injunction will issue with respect to that activity.